UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robert Every,
        Plaintiff

        v.                                    Case No. 18-cv-43-SM
                                              Opinion No. 2018 DNH 183
Town of Littleton, New Hampshire;
Andrew Dorsett, Town Manager;
Milton Bratz, Selectman;
Schuyler Sweet, Selectman;
Edward Hennessey, Former Selectman;
Paul Smith, Chief of Police;
Stephen Cox, Detective Sergeant; and
George McNamara, Public Works Director,
        Defendants


                        **O R D E R**

        Pro se plaintiff, Robert Every, brings this action against

the Town of Littleton, New Hampshire, as well as several town

officials in their official capacities.  He alleges that the

defendants, either individually or collectively, violated his

"protections under the Fourth, Fifth, Sixth, and Fourteenth

Amendments."  Compl. ¶ 1.  Every also advances common law claims

for false arrest, malicious prosecution, and libel.  Id.

Defendants move to dismiss all of plaintiff's claims, asserting

that none states a viable cause of action.  See generally Fed.

R. Civ. P. 12(b)(6).  Every objects.

For the reasons discussed, defendants' motion to dismiss is granted, but Every is afforded leave to file an amended complaint as to some of his claims, if he can do so in good faith.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." <u>SEC v. Tambone</u>, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted). The "plausibility" standard is satisfied if the factual allegations in the complaint, along with reasonable inferences, show more than a mere possibility of liability. <u>Walbridge v. Northeast Credit Union</u>, 299 F. Supp. 3d 338, 342 (D.N.H. 2018) (citing <u>Germanowski v. Harris</u>, 854 F.3d 68, 71 (1st Cir. 2017)).

Generally, a court must decide a motion to dismiss exclusively upon the allegations set forth in the complaint and the documents specifically attached, or convert the motion into one for summary judgment. See Fed. R. Civ. P. 12(2). There is, however, an exception to that general rule, as "[a] district court may also consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)) (alterations in original).

Both parties have previously litigated issues related to this suit. Plaintiff references those state court cases in his complaint, and defendants have submitted filings and orders from those prior actions in support of their motion. Documents from prior state court adjudications are ordinarily considered "[m]atters of public record." Giragosian, 547 F.3d at 65 (citing Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000)). And, neither party objects to the court's consideration of these records. Accordingly, the court may consider them without converting defendants' motion into one for summary judgment.

## Background

Accepting the factual allegations of the complaint as true - as the court must at this juncture - the relevant background is as follows. Every is the president of the Esterhill Boat Service Corporation. That corporation owns a building on Meadow Street in Littleton, New Hampshire, out of which two businesses operate: Asian Garden and Bagel Depot. Every does not have an ownership interest in either business.

During much of the time relevant to this proceeding, the Asian Garden held a wastewater permit, as required by the town's local ordinance (that permit, it seems, relates to the restaurant's use of the town's sewer system and apparently relates in some way to its use of grease traps in its drains, which are designed to minimize introduction of grease into the sewer system). The other business - Bagel Depot - did not have a wastewater permit (something Every says he repeatedly told town officials about). According to Every, he has never personally had (or been required to have) a wastewater permit, since he does not own the building, nor does he occupy it, nor does he make any discharges into the town sewer system.

At some unspecified time, the town began having problems with its sewer system. Despite far larger retail businesses in town that also discharged waste water into the public sewer

system (e.g., McDonalds, Applebee's, 99 Restaurant, and Wal-Mart), Every says the town targeted the building owned by Esterhill Boat Service Corporation as a potential source of the sewer problems. Every asserts that the property was targeted at least in part because Chief of Police Paul Smith held a personal grudge against him, one arising from an incident that occurred many years ago. When Every learned of the enforcement action, he says he wrote a letter to the town selectmen and a number of town officials, asking for a meeting, so he might explain the situation and address the town's concerns. That letter was ignored, as were Every's follow-up efforts to meet with town officials. Shortly thereafter, a newspaper printed a front-page article that (incorrectly) identified Every as the owner of the building and falsely stated that he was responsible for the town's sewer problems. Similar articles portraying Every in a negative light soon followed in other newspapers owned by the same publishing entity. Every suspects that one or more town officials provided the newspaper with the false information upon which the original article, as well as those that followed, were based.

Every claims that the town knew that the Meadow Street building was owned by the corporation, Esterhill Boat Service, rather than Every personally. <u>See</u> Pl.'s Obj. to Mot. to

Dismiss, Exhibit C, Letter from Town of Littleton (document no. 8-1) at 3. Nevertheless, in July of 2016, Every was criminally charged with some sort of illegal conduct relating to the grease traps in the Meadow Street building and/or wastewater discharge from that building into the town's sewer system (the complaint is woefully unclear on this point, but according to Every, he was "charged under the sewer ordinance").

In any event, shortly after Every was charged, the Littleton Police Department sought and obtained a warrant to inspect the grease traps at the Asian Garden and Bagel Depot. Every says there are at least two problems with that search warrant. First, he says Chief Smith and/or Detective Stephen Cox (it is difficult to tell from the complaint) knowingly lied in the affidavit supporting issuance of the warrant. It was falsely represented, Every says, that (a) Every owns the building, and (b) that Every held an "Industrial Discharge Class III Permit." Neither statement is true. And, says Every, Smith and Cox knew or should have known those statements were false. Second, Every says Detective Cox exceeded the scope of the warrant when he searched an area not covered by the warrant: the pump chamber in the building's utility room (an area of the

building inaccessible from either the area leased by the Asian
Garden or Bagel Depot).

As part of the preparation of his defense, Every sought
production from the town of certain public records relating to
the town's sewer system and the businesses connected to it.  In
particular, Every sought the "permits and sewer plans for
McDonald's, which is across the street" from the subject
building.  State Court Compl. (document no. 6-2) at ¶ 5.  His
request for copies of public documents was denied, on what Every
asserts were legally questionable grounds.  According to Every,
town officials refused to honor his request for those public
documents, citing his forthcoming criminal trial.  Those town
officials told Every they had been instructed to inform Every
that they would not release those public documents to him and,
instead, he would have to make a formal discovery request for
those documents from the criminal prosecutor.[1]

Every's criminal case proceeded to trial.  After the
prosecution rested, the presiding judge promptly entered a
judgment of acquittal as a matter of law.  Thereafter, pursuant
to N.H. Rev. Stat. Ann. 91-A, Every filed a "Right-to-Know"

---

[1]    Every says he made such a discovery request, but the
prosecutor refused to produce the documents he sought.  And,
when he sought judicial assistance, Every's motion to compel
discovery was denied (probably on relevance grounds).

action against the Town of Littleton in Grafton Superior Court.
On page two of his complaint, Every summarized his claims as
follows: "This case is focused on two items: the denial of
public records and [the] failure [of town officials] to comply
with open meeting requirements [imposed by RSA 91-A.]"  State
Court Compl. (document no. 6-2) at ¶ 4.  It is, however, not
entirely clear what relief he sought in that action.  He may
have been seeking copies of the documents related to the
McDonald's restaurant's sewer permits and connections.  See
Request for Discovery (document no. 6-2) at 27.  What is clear,
however, is that Every wanted the court to impose civil fines on
town officials for having acted in bad faith when they refused
his request for public documents.  See RSA 91-A:8.

    In April of 2017, the trial court dismissed Every's Chapter
91-A action, holding that the town officials were not obligated
to honor Every's request.  Specifically, the court held that
because the public records Every sought "were anticipated to be
used to defend the plaintiff in his criminal case, the Littleton
officials acted appropriately in referring the plaintiff's
request to the Town Prosecutor."  Order on Motion to Dismiss
(document no. 6-3) (the "Grafton County Court Order") at 5.  It
does not appear that Every appealed that decision.  For purposes

of this suit, the substantive legal merits of that ruling, however doubtful, are not important.

In January of 2018, Every filed this case against the Town of Littleton and several town officials (in their official capacities). As noted above, defendants now move to dismiss all of Every's claims.

Every's pro se complaint does not enumerate specific counts, as is generally expected. Instead, the complaint states that the case is based upon constitutional violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments; state law claims of false arrest, malicious prosecution and libel; as well as violations of Title 18 U.S.C. §§ 241-242. Every's claims generally relate to three events: the search of the Meadow Street building; the filing of criminal charges against Every for violation of a town ordinance; and Every's Right to Know Law requests for the town's sewer records.

Read liberally, as it must be, the complaint asserts the following federal claims: (i) violation of the Fifth and Fourteenth Amendment (based on Littleton's refusal to release publicly available sewer records to Every, and singling Every out for enforcement action); (ii) violation of the Sixth Amendment (based on Littleton's refusal to release publicly

available sewer records to Every during the criminal discovery process); (iii) violation of the Fourth Amendment (based on Littleton police officers' false statements to procure a warrant to search the Meadow Street building, and the officers exceeding the scope of the warrant, and malicious prosecution); and (iv) violation of 18 U.S.C. §§ 241-242 (based on Littleton's agents entering into a civil conspiracy to injure, oppress, and intimidate Every under color of law). Every also asserts state law claims for false arrest, libel and malicious prosecution.

## Discussion

1. Rooker Feldman Doctrine

    A. Right to Know Request

First, to the extent plaintiff's claims challenge the Grafton County Court judgment in his Chapter 91-A, Right to Know Law case, this court is without subject matter jurisdiction to address such claims. That is because the "Rooker–Feldman doctrine precludes federal jurisdiction over a challenge to a state court judgment to which the challenger was a party." Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009) (citations omitted).

Under Rooker–Feldman, a federal district court generally cannot review a state court's final judgment, however suspect it might be. See Lance v. Dennis, 546 U.S. 459, 463 (2006) (under

10

Rooker-Feldman doctrine, federal district "courts are precluded from exercising appellate jurisdiction over final state-court judgments"); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). The doctrine applies to cases where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Galibois v. Fisher, 174 Fed. Appx. 579, 580 (1st Cir. 2006) (quoting Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 291 (2005)). However, "if the plaintiff alleges a constitutional violation by an adverse party independent of the injury caused by the state court judgment, the doctrine does not bar jurisdiction." Davison v. Gov't of Puerto Rico - Puerto Rico Firefighters Corps., 471 F.3d 220, 222 (1st Cir. 2006) (citations omitted).

Rooker-Feldman also forecloses federal court jurisdiction over claims that are inextricably intertwined with claims adjudicated in a state court proceeding. See Sheehan v. Marr, 207 F.3d 35, 40 (1st Cir. 2000). "A federal claim is inextricably intertwined with the state court claims 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Sheehan, 207 F.3d at 40

(quoting Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999)).

Here, Every complains that the state court's dismissal of his Chapter 91-A "right to know" suit was in error, and that "[the] Grafton ruling infringes on federal rights protected by the Fifth, Sixth and Fourteenth Amendments." Pl.'s Obj. to Mot. to Dismiss (Document 8) at 9. That is precisely the sort of direct attack on a state court judgment Rooker-Feldman precludes the court from considering. See Exxon Mobil Corp., 544 U.S. at 284. The remedy, if any, lies in appealing the state judgment through the state system and, if necessary, eventually to the United States Supreme Court.

Every also takes issue with the town's refusal to provide records to criminal defendants by claiming that his right to equal protection was violated because "he was treated differently from everyone else as any other person in the United States could look at them."[2] Compl. ¶ 14. For Every to prevail on such a claim, this court would have to find that the

---

[2] To the extent Every is attempting to allege that the Right to Know law itself is unconstitutional, his complaint falls short. Every's factual allegations pertain only to the town's application of the Right to Know law to his request, and why the town's application was unconstitutional. His complaint does not sufficiently allege a general, facial challenge to the constitutionality of New Hampshire's Right to Know law.

requested records were, in fact, publicly available under RSA Chapter 91-A, but were impermissibly withheld from Every, in violation of the Right to Know law. But, the state court unambiguously held that "town officials did not violate RSA chapter 91-A by refusing to process [Every's] request for records" because Every was a criminal defendant at the time, and Chapter 91-A cannot serve as a substitute for criminal procedures. Def. Ex. B (Document 6-3) at 4. Thus, to find that the town violated the equal protection clause by withholding the sewer records, the court would have to reject the state court's determination that the town permissibly withheld the sewer records.

"Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." Hill v. Conway, 193 F.3d 33, 39 (1st Cir. 1999) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). Because Every's claims involving his Right to Know request would effectively function as a de facto appeal of the state court's judgment, this court lacks jurisdiction under Rooker-Feldman.

Every's claims arising out of his Chapter 91-A request are subject to dismissal on that basis.[3]

B.   State Court Criminal Discovery

Every's related claims, based upon defendants' refusal to provide the public sewer records during the criminal discovery process, are similarly problematic.  Every says that, by "not releasing public sewer records and refusing to provide them under discovery, the Littleton Police Department, . . . the Littleton Police Prosecutor, . . . and other Littleton officials" "deprived [him] of the right to exculpatory material in a criminal case in violation of constitutionally mandated protections under the Sixth Amendment."  Compl. ¶ 18.  Every's complaint also alleges, however, that defendants' refusal to produce the records in the course of criminal discovery was

---

[3]   Defendants argue that Every's claims relating to his Chapter 91-A request are also barred by the doctrine of res judicata.  Under New Hampshire law, "[r]es judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action."  Brooks v. Trustees of Dartmouth College, 161 N.H. 685, 690 (2011) (citation omitted).  While defendants may well be correct, the court need not reach the argument, having concluded that Every's claims are barred by Rooker-Feldman.

actually adjudicated in the criminal case, and that the state
court judge ruled on that very issue.  <u>See</u> Compl. ¶¶ 16-17.

Thus, whether Every was entitled to the records in the
criminal discovery process is an issue that has been finally
determined by the state court judge who presided over Every's
criminal trial.  While couched as claims challenging the
defendants' conduct in the criminal discovery process, Every's
claims actually challenge the state court's determination that
he was not entitled to the records as part of discovery.  In
other words, Every's asserted injury (the denial of records he
contends were necessary for his defense) was caused by the state
court's ruling that denied access to those records.  (It does
not seem readily apparent how those requested records would have
been relevant to any cognizable defense, but, again, what
matters is that the issue was raised and decided by a state
court of competent jurisdiction.)

By asking this court to rule that he was entitled to the
records as part of the state criminal discovery process, Every,
in reality, is asking this court to "review and reject" the
state court's determination that he was not entitled to the
records.  <u>Davison</u>, 471 F.3d at 223 ("Rooker-Feldman squarely
applies when a plaintiff insists that we must review and reject
a final state court judgment.").  For that reason, the court

lacks jurisdiction to hear those claims under <u>Rooker-Feldman</u> as
well.

2.    <u>Standing: Illegal Search of the Meadow Street Building</u>

With respect to plaintiff's Fourth Amendment claims arising
out of the search of the Meadow Street building, defendants
argue that, because plaintiff asserts that he is not the owner
of the building and has no meaningful presence there, he lacks
standing to bring claims arising out of the building's search.

"The Fourth Amendment protects '[t]he right of the people
to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures.'"  <u>Carpenter v.
United States</u>, 138 S. Ct. 2206, 2213 (2018) (quoting <u>Camara v.
Municipal Court of San Francisco</u>, 387 U.S. 523, 528 (1967)).
The "Fourth Amendment protects people, not places," <u>Katz v.
United States</u>, 389 U.S. 347, 351 (1967), and "Fourth Amendment
rights are personal rights, which . . . may not be vicariously
asserted."  <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-134 (1978)
(quoting <u>Alderman v. United States</u>, 394 U.S. 165, 174 (1969))
(citations omitted).

"The Fourth Amendment's protection against unreasonable
searches and seizures extends only to those places and interests
in which the [individual] has a reasonable expectation of

privacy." United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir.
1994) (citing United States v. Cruz Jiménez, 894 F.2d 1, 5 (1st
Cir. 1990)) (further citations omitted). "Such an expectation
of privacy is a threshold standing requirement that a [party]
must establish before a court can proceed with any Fourth
Amendment analysis."[4] Id. (citations omitted). "The Fourth
Amendment's standing principle is embodied in the requirement
that a party claiming a Fourth Amendment violation must
demonstrate that he, and not someone else, had a legitimate
expectation of privacy in the area or thing searched." Berry v.
FBI, et al., No. 17-CV-143-LM, 2018 WL 3468703, at *5 (D.N.H.
July 17, 2018) (citing Byrd v. United States, 138 S. Ct. 1518,
1526 (2018)). Therefore, in order to sufficiently allege a
Fourth Amendment violation, Every must allege facts making it
plausible that he personally had a "legitimate expectation of
privacy" in the Meadow Street building and, more specifically,
the utility room. United States v. Collins, 811 F.3d 63, 65
(1st Cir. 2016) (citing Sanchez, 943 F.2d at 112) (additional
citations omitted)).

---

[4]    As our court of appeals has explained, the term "standing"
is used "somewhat imprecisely" in this context to refer to a
"threshold substantive determination" of a defendant's
"legitimate expectation of privacy as a prerequisite to
challenging assertedly unlawful police conduct." United States
v. Sanchez, 943 F.2d 110, 113 n.1 (1st Cir. 1991).

The court examines several factors to determine if a reasonable expectation of privacy exists, namely:

> ownership, possession, and/or control; historical use
> of the property searched or the thing seized; ability
> to regulate access; the totality of the surrounding
> circumstances; the existence or nonexistence of a
> subjective anticipation of privacy; and the objective
> reasonableness of such an expectancy under the facts
> of a given case.

Sanchez, 943 F.2d at 113 (quoting United States v. Aguirre, 839 F.2d 854, 856-57 (1st Cir. 1988)).

Given the allegations in his complaint, it is plain that Every is attempting, as an individual, to vicariously assert the Fourth Amendment rights of the Esterhill Boat Service Corporation, the corporate owner of the building, and/or the tenants who occupy that building. Every explicitly disclaims ownership of the building, and asserts that he has "no presence" there. See e.g., Compl. at ¶¶ 5, 10. To the extent he is trying to assert a proprietary interest in the premises (through the Esterhill Corporation), he does not actually state that he has an ownership stake, or the extent of it, in that corporation.[5] See generally Compl. at ¶ 5. With respect to the

_____

[5]    Even if Every had alleged his status as a shareholder of the corporation, that allegation, absent some "personal connection to the places searched and the materials seized," would likely be insufficient. United States v. Nagle, 803 F.3d 167, 178 (3d Cir. 2015) (citing United States v. SDI Future Health, Inc., 568 F.3d 684, 698 (9th Cir. 2009)). See also

building's utility room, more specifically, Every alleges that
the room is not accessible to the business tenants, but does not
allege his own exclusive control of the space.  While the
complaint and its attachments suggest that Every occasionally
visits the utility room, he does not claim to use the space to
store personal records or effects as one would in an office.

   Upon consideration of the relevant factors, the court finds
that Every's allegations fall short of sufficiently establishing
that he had a reasonable expectation of privacy in the utility
room, especially given his allegations that he has no personal
presence in the Meadow Street building.  Cf. United States v.
Mancini, 8 F.3d 104, 1110 (1st Cir. 1993) (defendant's actions
demonstrate an expectation of privacy where his "clearly
labeled" documents were stored in city archive, "segregated from

---

United States v. Moscatiello, 771 F.2d 589 (1st Cir. 1985),
vacated on other grounds sub. nom., Carter v. United States, 476
U.S. 1138 (1986) (co-defendants had a reasonable expectation of
privacy in a warehouse owned by a corporation where they had
contributed the capital to acquire the premises and were the
sole shareholders in the corporation; only the defendants
possessed keys to the premises, which was kept locked; and
defendants kept personal property on the premises.); Williams v.
Kunze, 806 F.2d 594, 599 (5th Cir. 1986) ("An individual's
status as the sole shareholder of a corporation is not always
sufficient to confer upon him standing to assert the
corporation's fourth amendment rights.  Unless the shareholder,
officer or employee can demonstrate a legitimate and reasonable
expectation of privacy in the records seized, he lacks standing
to challenge the search and seizure.") (citing United States v.
Britt, 508 F.2d 1052, 1055 (5th Cir. 1975)).

other items in the secured city archives, located upstairs "in the very building in which [defendant] worked throughout his tenure in political office," and defendant "took steps to assure that no one would have access to his files without his prior authorization"); United States v. Novak, No. 13 CR 312, 2015 WL 720970, at *5-7 (N.D. Ill. Feb. 18, 2015) (holding that president of hospital -- who also owned the corporations that owned the hospital building -- had a reasonable expectation of privacy in his office suite, but not other areas of hospital where he did not routinely work and could not "exhibit[] a personal connection"), aff'd sub. nom. United States v. Nagelvoort, 856 F.3d 1117 (7th Cir. 2017).

Every's Fourth Amendment claim arising out of the search of the Meadow Street building must, then, be dismissed for lack of standing. To the extent Every can plausibly and in good faith assert factual allegations that may demonstrate his standing to assert such claims, he may timely file a motion to amend his complaint, as set forth below.

3.   Federal Malicious Prosecution Claim

Defendants next argue that Every's federal malicious prosecution claim must be dismissed because Every fails to

allege facts sufficient to satisfy the elements of that cause of action.

The First Circuit has construed the right to be free from malicious prosecution as falling under the Fourth Amendment's "guarantee of freedom from seizure but upon probable cause."[6] Hernandez-Cuevas v. Taylor, 723 F.3d 91, 100 (1st Cir. 2013). To advance a claim for unconstitutional malicious prosecution, Every must allege facts sufficient to establish that (1) he was seized pursuant to legal process unsupported by probable cause, and (2) criminal proceedings terminated in his favor. Id. at 101.

"In a malicious prosecution case brought under Section 1983, 'the constitutional violation lies in the deprivation of liberty accompanying the prosecution rather than in the prosecution itself.'" Moreno-Medina v. Toledo, 458 Fed. Appx.

---

[6] As the court noted in Hernandez-Cuevas v. Taylor, 723 F.3d at 98:

> [T]he Supreme Court's opinion in Albright v. Oliver, 510 U.S. 266 (1994), firmly closed the door on substantive due process as a vehicle for bringing such claims. In addition, at least a plurality of the Justices concluded that procedural due process would likewise rarely, if ever, be an appropriate vehicle for such claims. See id. at 283-86, (Kennedy, J., concurring in the judgment) (concluding that any procedural due process malicious prosecution claim would, in most cases, be precluded by the Parratt-Hudson doctrine).

4, 7 (1st Cir. 2012) (quoting Britton v. Maloney, 196 F.3d 24,
29 (1st Cir. 1999)) (further quotations omitted).  Therefore,
"[f]or a state actor to violate the Fourth Amendment by
initiating a malicious prosecution against someone, the criminal
charges at issue must have imposed 'some deprivation of liberty
consistent with the concept of [a] 'seizure.'"  Britton, 196
F.3d at 28 (quoting Singer v. Fulton Cty. Sheriff, 63 F.3d 110,
116 (2d Cir. 1995)).

    Thus, "[t]he crux of the inquiry is whether a 'seizure'
occurred."  Britton, 196 F.3d at 29-30.  The Supreme Court has
stated that a "person is seized whenever officials restrain[ ]
his freedom of movement such that he is not free to leave."
Manuel v. City of Joliet, 137 S. Ct. 911, 917 (2017) (quoting
Brendlin v. California, 551 U.S. 249, 254 (2007)) (alterations
in original).  So, in order to successfully state a claim, Every
must allege a "deprivation of liberty, caused by the application
of legal process, that approximates a Fourth Amendment seizure."
Moreno-Medina, 458 Fed. Appx. at 7.

    Every alleges that the Littleton Police Department
telephoned to inform him that he would be charged under the Town
Sewer Ordinance, and a New Hampshire State Trooper arrived at
his home to serve him with a summons to appear in court.  Compl.
at ¶ 1.  Every does not allege that he was detained, or

arrested, or that his liberty was restricted in any way. Those allegations fall short of describing a deprivation of liberty. The mere issuance of a summons does not constitute a deprivation of liberty simply because it carries with it the possibility of confinement if the subject fails to appear in court as directed. See Britton, 196 F.3d at 30 (1st Cir. 1999) ("the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment"). A show of authority amounts to a "seizure" only when it results in the "'intentional acquisition of physical control' over the subject and causes a 'termination of his freedom of movement.'" Id. (quoting Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989)) (alterations omitted)).

Because Every has not sufficiently alleged a deprivation of liberty within the meaning of the Fourth Amendment, he has not stated a viable Section 1983 claim for malicious prosecution. Defendant's motion to dismiss the federal malicious prosecution claim is necessarily granted. To the extent Every can plausibly and in good faith assert factual allegations that may support a federal malicious prosecution claim, he may timely file a motion to amend his complaint as set forth below.

4.  <u>Equal Protection – Class of One</u>

Every's equal protection claim is premised on the theory
that the town violated his rights by bringing a sewer ordinance
enforcement against him – and only him – when the town was
experiencing sewer issues.  Defendants counter that plaintiff's
equal protection claim must be dismissed because he has not
plausibly stated a viable claim.

In <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564
(2000), the Supreme Court recognized that arbitrary exercises of
power can deprive a "class of one" of equal protection.  To
bring a "class of one" equal protection claim, a plaintiff must
allege that he was "intentionally treated  . . . differently
from others similarly situated and there was no rational basis
for this disparate treatment."  <u>Najas Realty, LLC v. Seekonk
Water Dist.</u>, 821 F.3d 134, 144 (1st Cir. 2016) (citations
omitted).  "[P]laintiffs claiming an equal protection violation
must first identify and relate <u>specific instances</u> where persons
<u>situated similarly in all relevant aspects</u> were treated
differently".  <u>Cordi-Allen v. Conlon</u>, 494 F.3d 245, 250-51 (1st
Cir. 2007) (quoting <u>Buchanan v. Maine</u>, 469 F.3d 158, 178 (1st
Cir. 2006)) (emphasis in original).

Specific comparators and their similarities must be alleged
with "reasonable particularity" at the Rule 12(b)(6) stage, as

"[a]n equal protection claimant 'may not prevail [against a Rule 12(b)(6) motion] simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus.'" Barrington Cove, LP v. R.I. Housing and Mortg. Fin. Corp., 246 F.3d 1, 8, 10 (quoting Coyne v. Somerville 972 F.2d 440, 444 (1st Cir. 1992)). Ultimately, "[a]n individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" Davis v. Coakley, 802 F.3d 128, 133 (1st Cir. 2015) (quoting Barrington Cove, 246 F.3d at 8). In claims such as Every's, the plaintiff must ordinarily plead facts that show that the defendants' "differential treatment of the plaintiff was motivated by 'bad faith or malicious intent to injure.'" Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995)).

Freeman v. Town of Hudson, 714 F.3d 29, 39 (1st Cir. 2013), is instructive. In Freeman, plaintiffs argued that their equal protection rights had been violated when a conservation commission treated them differently from their neighbors. Id. The Court of Appeals for the First Circuit affirmed dismissal of plaintiffs' claim, finding that plaintiffs had not sufficiently

met the "'similarly situated' test." Id. at 38 (quoting Vill.
Of Willowbrook, 528 U.S. at 564). Plaintiffs had alleged that
their neighbor's property abutted the same protected area, but
the court observed, the similarities ended there. Id.
Plaintiff's complaint did not allege that the neighbors were
violating the policy at issue, and the court concluded that
plaintiffs had failed to demonstrate that they were similarly
situated to the neighbors. Id.

In this case, Every has alleged an inequity: questionable
charges were filed against him for sewer violations, while no
charges were filed against other potential violators. Compl. ¶¶
17-18. Every further alleges that defendants were acting in bad
faith, seeking a scapegoat for the sewer issues, and that he was
singled out because the police chief harbored a long-standing
grudge against him. Compl. ¶ 5.

However, as in Freeman, Every fails to allege any facts
tending to show how the comparators he lists in his complaint
were similarly situated to him. Every's listed comparators
consist of a few national franchise establishments located in
the area. Every asserts that these businesses would be "a far
more formidable target than the plaintiff." Compl. ¶ 5. But,
Every's complaint merely notes that these business exist and are
located near the Meadow Street building. The complaint does not

allege that any of these businesses were also thought to be violating the sewer ordinance.  Nor is an inference that they were violating the ordinance plausible given Every's allegations, as there is an "obvious alternative explanation" for those businesses not being charged: they were likely not violating or not thought to be violating the ordinance. Ashcroft v. Iqbal, 556 U.S. 662, 682 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 567 (2007)).

Because Every has not alleged facts sufficient to show that comparably situated people or businesses existed and were treated in a substantively different manner than he, Every has not alleged facts sufficient to state a plausible violation of the equal protection clause.  See Freeman, 714 F.3d at 39.  His equal protection claim must therefore be dismissed, albeit without prejudice.  To the extent Every can plausibly and in good faith assert factual allegations that may support his equal protection claim, he may timely file a motion to amend his complaint as set forth below.

5.  Official Capacity: Failure to Allege A Policy, Custom, or Procedure

In addition to the claim-specific deficiencies addressed supra, defendants also move to dismiss all of Every's Section 1983 claims against them because Every names each defendant in

his official, not individual, capacity, as an agent of the Town

of Littleton.  Therefore, defendants argue, the town is the sole

accountable defendant for all claims, and, based on Monell v.

Department of Social Services, 436 U.S. 658 (1978), it can be

held liable only if a town policy, custom, or procedure was the

driving force behind Every's claimed injuries.  Every's claims

against the town must fail, say defendants, because he has not

invoked any policy, custom or procedure of the town as the

moving force leading to his injuries.

An official-capacity suit is "another way of pleading an

action against an entity of which an officer is an agent."

Kentucky v. Graham, 473 U.S. 159, 165 (1984).  In Monell, 436

U.S. at 691, the Supreme Court held that a municipal entity

"cannot be held liable solely because it employs a tortfeasor –

or, in other words, a municipality cannot be held liable under §

1983 on a respondeat superior theory."  Instead, the government

"as an entity is responsible under § 1983," "when execution of a

government's policy or custom, whether made by its lawmakers or

by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury."  Monell, 436 U.S. at 694.

Our court of appeals has added that, "[h]olding the city liable

only if the injury results from an officially sanctioned policy

or custom, exempts the municipality from responsibility for the

aberrant and unpredictable behavior of its employees while
making it liable for acts and conduct rightly attributable to
the city." Bordanaro v. McLeod, 871 F.2d 1151, 1155 (1st Cir.
1989) (citations omitted).

Every's complaint does not allege facts that suggest that
an officially sanctioned policy or custom was the "driving
force" behind any of his claimed injuries.  Indeed, in Every's
objection to defendants' motion to dismiss, he seemingly
concedes the point, acknowledging that he "rather doubts that
the Littleton Police Department has a policy on how to commit
perjury . . . how to conduct forbidden non-public meetings . . .
or how to deny access to public records."  Obj. to Mot. to
Dismiss (Document 8) at 15.  However, having determined that
Every's Section 1983 claims must be dismissed on other bases,
the court need not reach the issue.[7]

6.   Federal Criminal Code Claims

Finally, plaintiff's complaint alleges violations of the
Criminal Code, Title 18 U.S.C §§ 241-242.  As a general matter,
a private citizen has no authority to initiate a federal

---

[7]     As previously mentioned, Every is a pro se litigant.  And,
as a pro se litigant, he may not understand, and, indeed, is
likely unfamiliar with, the distinctions between individual
capacity and official capacity suits.  To the extent Every does
take the opportunity to amend his complaint, he should note the
important distinction.

criminal prosecution and "[o]nly the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. § 1983)." <u>Cok v. Cosentino</u>, 876 F.2d 1, 1 (1st Cir. 1989) (per curiam). Because there is no private right of action for claims under 18 U.S.C. §§ 241-242, Every cannot state a viable claim for which relief may be granted. For that reason, Every's criminal code claims must be dismissed.

7.    <u>State Law Claims</u>

As drafted, plaintiff's complaint fails to set forth the essential elements of any viable federal claims. Consequently, the court need not consider whether it is appropriate to exercise supplemental jurisdiction over his state law claims.[8] <u>See</u> 28 U.S.C. § 1367(c) ("district courts may decline to exercise supplemental jurisdiction" over plaintiff's state law claims if "the district court has dismissed all claims over which it has original jurisdiction"). Should plaintiff amend his complaint to state viable federal causes of action, the

---

[8]    There is no suggestion in the pleadings that the court may properly exercise subject matter jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

court will then consider whether state law claims over which supplemental jurisdiction may be exercised are viable.

## Conclusion

This limited record discloses a sympathetic plaintiff who may well have been ill-treated by the Town of Littleton and various town officials, but who is pursuing the wrong remedies in the wrong court. This court is without jurisdiction to consider Every's state law claims as pled, and he has not adequately pled any cognizable federal claims.

For the reasons discussed, and for those given in defendant's memorandum in support of its motion, the Town of Littleton's motion to dismiss (document no. 6) is **GRANTED** with prejudice as to Every's claims for violation of the Fifth, Sixth, and Fourteenth Amendment, based on defendants' refusal to release sewer records to Every. Every's claims under the federal criminal code are likewise dismissed with prejudice. Defendant's motion to dismiss Every's claims under the Fourteenth Amendment, based on Littleton's singling Every out for enforcement during the period of sewer issues, and claims for violation of the Fourth Amendment is **GRANTED,** but without prejudice to plaintiff's filing a motion for leave to file an amended complaint (to be attached to the motion for leave) within thirty (30) days of the date of this order, if he can

plausibly and in good faith allege claims under the Fourth and/or Fourteenth Amendment, based upon adequate factual support.

      **SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 11, 2018

cc:  Robert Every, pro se
     Corey M. Belobrow, Esq.