UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robert Every,
      Plaintiff

      v.                            Case No. 18-cv-43-SM
                                        Opinion No. 2019 DNH 079
Town of Littleton, New Hampshire;
Andrew Dorsett, Town Manager;
Milton Bratz, Selectman;
Schuyler Sweet, Selectman;
Edward Hennessey, Former Selectman;
Paul Smith, Chief of Police;
Stephen Cox, Former Detective Sergeant; and
George McNamara, Former Public Works Director,
      Defendants


**O R D E R**

On January 16, 2018, pro se plaintiff, Robert Every, filed
suit against the Town of Littleton, New Hampshire, as well as
several town officials, advancing various state and federal
claims generally relating to criminal charges filed by the Town
of Littleton against Every on July 6, 2016. Defendants moved to
dismiss Every's claims, and, on September 11, 2018, the court
granted defendants' motion, but allowed Every the opportunity to
file an amended complaint with respect to his claims under the
Fourteenth Amendment, based on defendants' having allegedly
singled out Every for enforcement, as well as claims brought
under the Fourth Amendment.

On November 2, 2018, Every filed an amended complaint.
Defendants again move to dismiss plaintiff's claims.  Every
objects.


## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the court must "accept as true all well-pleaded facts
set out in the complaint and indulge all reasonable inferences
in favor of the pleader."  SEC v. Tambone, 597 F.3d 436, 441
(1st Cir. 2010).  Although the complaint need only contain "a
short and plain statement of the claim showing that the pleader
is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege
each of the essential elements of a viable cause of action and
"contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face."  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (citation and internal
punctuation omitted).  The "plausibility" standard is satisfied
if the factual allegations in the complaint, along with
reasonable inferences, show more than a mere possibility of
liability.  Walbridge v. Northeast Credit Union, 299 F. Supp. 3d
338, 342 (D.N.H. 2018) (citing Germanowski v. Harris, 854 F.3d
68, 71 (1st Cir. 2017)).

Generally, a court must decide a motion to dismiss exclusively upon the allegations set forth in the complaint and the documents specifically attached, or convert the motion into one for summary judgment.  <u>See</u> Fed. R. Civ. P. 12(2).  There is, however, an exception to that general rule, as "[a] district court may also consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'"  <u>Giragosian v. Ryan</u>, 547 F.3d 59, 65 (1st Cir. 2008) (quoting <u>In re Colonial Mortgage Bankers Corp.</u>, 324 F.3d 12, 20 (1st Cir. 2003)) (alterations in original).

## Background

For purposes of resolving the motion to dismiss, the factual allegations set forth in Every's amended complaint and the attached exhibits must be taken as true.  The facts asserted by Every in his amended complaint are substantially similar to those alleged in his original complaint[1] and are fully described in the September, 2018, order.

Every is the sole director and officer of the Esterhill Boat Service Corporation.  He holds a controlling interest in

---

[1] Indeed, Every states, "This background is to briefly clarify and address deficiencies in the original filing."  Am. Compl., p. 4.

the stock.  He makes all policy and operational decisions for
the corporation.  The Esterhill Boat Service Corporation owns a
building located at 551 Meadow Street in Littleton, New
Hampshire, in which two restaurants, Asian Garden and Bagel
Depot, operate.  Every has no ownership interest in either
restaurant.

The Meadow Street building is "below the level of sewer,"
so it cannot employ "gravity flow to the sewer line," like most
other buildings.  Am. Compl., p. 5.  Instead, the building uses
a pump station to pump sewage from the building into the town's
sewer line on Meadow Street.  The building's pump/utility room
includes a pump chamber, lift stations, and other systems that
facilitate the disposal process.  Every designed and rebuilt the
pump system, and he oversees and maintains the pump/utility
room.  According to Every, he "has overseen the installation,
maintained and worked on all the alarm systems, safety systems,
primary and back-up systems in the pump/utility room and
considers them his intellectual property."  Am. Compl. ¶ 50.
Every keeps in the pump room "information and manuals on the
[pump] system," as well as his notes on the system.  Id. at ¶
51.  He also "leaves his tools in the pump/utility room with the
expectation they will not be disturbed, . . . because he
restricts access to the room based solely on his own

discretion." Id. at 51. According to Every, "[n]o one enters
the pump/utility room without the plaintiff being there or his
express permission." Id. at 51. The only way to access the
pump room is through the offices of AllStaff Services (another
business located in the 551 Meadow Street Building). Every says
that the AllStaff Services staff contacts him for permission
before allowing anyone access.

During much of the time relevant to this proceeding, the
Asian Garden held a wastewater permit. The other business –
Bagel Depot – did not have a wastewater permit (something Every
says he repeatedly told town officials). Every has never
personally had (or been required to have) a wastewater permit,
since he does not (personally) own the building, nor does he
occupy it, nor does he personally make any discharges into the
town sewer system. As he puts it, "[t]he plaintiff maintains no
presence in the building insofar as discharging [sewage] into
the sewer system. The plaintiff neither runs a business out of
the building nor introduces sewage into the Littleton sewer
system beyond occasionally getting a cup of coffee and a bagel
in Bagel Depot – something Littleton Police officers also do."
Am. Compl. ¶ 48.

At some point, the town began having problems with its
sewer system, problems that Every alleges were "out of control

5

and . . . widespread." Am. Compl. ¶ 10.  In his amended
complaint, Every describes a December, 2016, incident in which
"gallons of sewage" erupted onto Meadow Street, and he cites a
July, 2017, news article that discusses Littleton's sewage
problems and the town's remediation efforts.  Am. Compl. ¶ 21,
and Exh. E.  Every attributes the town's sewage problems to
several other town businesses, including McDonald's, Shaw's, and
the 99 Restaurant.

Despite these much larger businesses that discharged
wastewater into the public sewer system, Every says the town
targeted the building owned by Esterhill Boat Service
Corporation as a potential source of its sewer problems, and
initiated an enforcement action.  Every asserts that the
property was targeted, at least in part, because Chief of Police
Paul Smith held a personal grudge against him, one arising from
an incident that occurred many years ago.

When Every learned of the enforcement action, he says he
wrote a letter to the town selectmen and a number of town
officials, dated July 29, 2016, requesting a meeting, so he
might explain the situation and address the town's concerns.
That letter was ignored, as were Every's follow-up efforts to
meet with town officials.  About this same time, a local
newspaper printed a front-page article that incorrectly

identified Every as the owner of the Meadow Street building, and stated that he was responsible for the town's sewer problems. Additional articles portraying Every in a negative light soon followed in other newspapers. Every complains that the tone of those articles (which, he says, imply that Every is "pretty much responsible for Littleton's sewer issues") differed from the media's coverage of other town sewer-related issues.[2] Am. Compl. ¶ 28-29.

Every claims that the town knew that the Meadow Street building was owned by the Esterhill Boat Service Corporation, rather than Every personally. See Am. Compl., ¶ 35 and Exh. C, Letter from Town of Littleton (document no. 8-1) at 3. Nevertheless, Every was criminally charged with violating Chapter 13, Article V, Section 3(II)(D) of the Littleton sewer ordinance, which prohibits persons from discharging (or causing to be discharged) "[s]olid or viscous substances in quantities or of such size capable of causing obstruction to the flow in sewers, or other interference with the proper operation of the wastewater facilities."

---

[2]     In his initial complaint, Every contended that he suspected that one or more town officials provided the newspaper with the false information upon which the original article, as well as those that followed, were based.

After Every was charged, the Littleton Police Department
sought and obtained a warrant to inspect the grease traps at the
Asian Garden and Bagel Depot restaurants.  While the amended
complaint is not entirely clear, Every seems to allege that the
search warrant was deficient for two reasons.  First, he seems
to say that Littleton police officers falsely swore to material
facts in the affidavit supporting the application for the
warrant.  Every's amended complaint does not provide additional
details in that regard, but in his original complaint, Every
alleged that the warrant application falsely represented that
(a) Every personally owned the building, and (b) Every held an
"Industrial Discharge Class III Permit."  Neither statement is
literally true.  And, says Every, the officers who applied for
the warrant knew or should have known that those statements were
false.  Second, Every says Detective Cox (and a uniformed
Littleton police officer whose name Every does not know)
exceeded the scope of the warrant when they searched an area not
covered by the warrant: the pump room.

Every's criminal case proceeded to trial.  Every asserts
that various forms of alleged prosecutorial misconduct occurred
during his trial, including the prosecutor's rehearsal of
witnesses, witness collusion, and the prosecutor's ignoring
witness's concerns regarding the charge against Every.  After

the prosecution rested, the presiding judge entered judgment of acquittal as a matter of law.

Based on the foregoing, Every asserts Section 1983 claims for violations of his Fourth and Fourteenth Amendment rights.

**Discussion**

1.   Fourth Amendment Claim

As the court noted in its September, 2018, order, "[t]he Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"  Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018) (quoting Camara v. Municipal Court of San Francisco, 387 U.S. 523, 528 (1967)). The "Fourth Amendment protects people, not places," Katz v. United States, 389 U.S. 347, 351 (1967), and "Fourth Amendment rights are personal rights, which . . . may not be vicariously asserted."  Rakas v. Illinois, 439 U.S. 128, 133-134 (1978) (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)) (citations omitted).

"The Fourth Amendment's protection against unreasonable searches and seizures extends only to those places and interests in which the [individual] has a reasonable expectation of privacy."  United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir.

1994) (citing <u>United States v. Cruz Jiménez</u>, 894 F.2d 1, 5 (1st Cir. 1990)) (further citations omitted). "Such an expectation of privacy is a threshold standing requirement that a [party] must establish before a court can proceed with any Fourth Amendment analysis."[3] <u>Id</u>. (citations omitted). "The Fourth Amendment's standing principle is embodied in the requirement that a party claiming a Fourth Amendment violation must demonstrate that he, and not someone else, had a legitimate expectation of privacy in the area or thing searched." <u>Berry v. FBI, et al.</u>, No. 17-CV-143-LM, 2018 WL 3468703, at *5 (D.N.H. July 17, 2018) (citing <u>Byrd v. United States</u>, 138 S. Ct. 1518, 1526 (2018)).

The defendants argue that Every lacks a reasonable expectation of privacy in the pump room sufficient to assert a Fourth Amendment claim. Defendants also note that Every, individually, had no expectation of privacy in the item seized in this case, that is, samples of wastewater or waste product flowing irretrievably into the Littleton sewer system.

---

[3]     As our court of appeals has explained, the term "standing" is used "somewhat imprecisely" in this context to refer to a "threshold substantive determination" of a defendant's "legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct." <u>United States v. Sanchez</u>, 943 F.2d 110, 113 n.1 (1st Cir. 1991).

So, at issue once again is whether Every – in his personal capacity – has sufficiently established a legitimate expectation of privacy for Fourth Amendment purposes.  The Supreme Court established a "two-part test for analyzing the expectation question: first, whether the movant has exhibited an actual, subjective expectation of privacy; and second, whether such subjective expectation is one that society is prepared to recognize as objectively reasonable."  United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009) (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)).

Relying on Riverdale Mills Corp. v. Pimpare, 392 F.3d 55 (1st Cir. 2004), defendants make a compelling argument that Every did not have an objectively reasonable expectation of privacy in the wastewater samples seized in this case.  See Riverdale, 392 F.3d at 64 ("Riverdale has abandoned any reasonable expectation of privacy in the wastewater by allowing it to flow irretrievably into a place where it will be 'exposed ... to the public.'") (quoting California v. Greenwood, 486 U.S. 35, 40 (1988)).  Every emphatically disavows any personal interest in the building's wastewater in his Amended Complaint, pleading that he "maintains no presence in the building insofar as discharging sewerage into the sewer system.  The plaintiff neither runs a business out of the building nor introduces

sewage into the Littleton sewer system beyond occasionally
getting a cup of coffee and a bagel in Bagel Depot." Am. Compl.
¶ 48. At no point, then, did Every have or claim a possessory
interest in the item seized – wastewater discharge samples.

Every's claim of privacy expectations in the area searched,
the utility pump room of the commercial property owned by the
Esterhill Boat Services Corporation, is also doubtful.
Certainly, the Esterhill Boat Corporation, "as [a] corporate
entit[y], could challenge the search" of the utility room. U.S.
v. Nagle, 803 F.3d 167, 176 (3d Cir. 2015). But, that is not
the question. The question here is whether Every, the owner of
the corporation's stock and its president, has standing in his
individual capacity to challenge the search.

The Supreme Court has held that an "owner or operator of a
business has an expectation of privacy in commercial property,"
but that expectation "is different from, and indeed less than, a
similar expectation in an individual's home." New York v.
Burger, 482 U.S. 691, 699-600 (1987). See also Vega-Rodriguez
v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997)
("Generally speaking, business premises invite lesser privacy
expectations than do residences."). The "great variety of work
environments" requires analysis of reasonable expectations "on a
case-by-case basis." O'Connor v. Ortega, 480 U.S. 709, 718

(1987).  And, as the Court of Appeals for the Third Circuit

observed in U.S v. Nagle, 803 F.3d at 176-177:

> [a]lthough the Supreme Court has not clarified
> precisely how much "less" of an expectation of privacy
> a business owner has in commercial premises, we see a
> consensus among the Courts of Appeals that a corporate
> shareholder has a legitimate expectation of privacy in
> corporate property only if the shareholder
> demonstrates a personal expectation of privacy in the
> areas searched independent of his status as a
> shareholder.

Id. at 176-177 (emphases added).  Cf., United States v. Mancini,

8 F.3d 104, 109 (1st Cir. 1993) (considering the following

factors as relevant to the Fourth Amendment standing

determination: "ownership, possession and/or control; historical

use of the property searched or the thing seized; ability to

regulate access; the totality of the surrounding circumstances;

the existence or nonexistence of a subjective anticipation of

privacy; and the objective reasonableness of such an expectancy

under the facts of a given case.") (quoting Sanchez, 943 F.2d at

113) (further quotations omitted).


So, did Every, by his conduct, exhibit "an actual

expectation of privacy; that is," has he shown that he sought to

preserve the pump room area as a private space for himself,

personally?  Bond v. United States, 529 U.S. 334, 338 (2000).

Every asserts that the pump room is his "domain and has been for

the entire time of building ownership," and that access to the

room is gained only with his permission. Am. Compl. ¶ 51; <u>see</u> <u>also</u> Am. Compl. ¶ 62. He further states:

> [a]ll corporation presidents do not wear a suit and
> operate from behind a desk. Some, such as the
> plaintiff, are more hands on, and exercise their
> control while operating outside the typical office
> environment. Nevertheless, whether a president
> exercises his control in an office or in the utility
> room, both have an equal expectation of privacy in the
> area where they "routinely work" and have a "personal
> connection."

Pl.'s Obj. to Mot. to Dismiss at 10 (quoting <u>U.S. v. Novak</u>, No. 13-CR-312, 2015 WL 720970, at *5-7 (N.D. Ill. Feb. 18, 2015)). Every does not allege that the pump room door was locked.[4] The room, presumably, could be accessed by any AllStaff employee, or by anyone else visiting the AllStaff office who opened the door.

But, even assuming that Every had a demonstrable, personal, and subjective expectation of privacy in the pump room, he does not allege facts sufficient to establish that that subjective expectation was "objectively reasonable." That is because Every has not sufficiently alleged a personal connection to the pump room independent of his status as an agent of the Esterhill Boat Services Corporation.

---

[4]    In his objection to defendant's motion to dismiss, Every does contend that the pump chamber itself, from which defendants obtained the wastewater samples, was kept locked. It is not entirely clear how the government obtained the wastewater samples, but presumably a key was available.

Every is the sole director and officer of the Esterhill
Boat Services Corporation, and he owns a controlling interest in
the stock.  However, a corporation and the individual who
created or owns that corporation are separate entities.  See
Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163
(2001), ("linguistically speaking, the employee and the
corporation are different 'persons,' even where the employee is
the corporation's sole owner.  After all, incorporation's basic
purpose is to create a distinct legal entity, with legal rights,
obligations, powers, and privileges different from those of the
natural individuals who created it, who own it, or whom it
employs.").  While some alleged facts do favor personal
standing, Every must allege a personal relationship to the area
searched.  See Williams v. Kunze, 806 F.2d 594, 599 (5th Cir.
1986) ("An individual's status as the sole shareholder of a
corporation is not always sufficient to confer upon him standing
to assert the corporation's fourth amendment rights.  Unless the
shareholder, officer or employee can demonstrate a legitimate
and reasonable expectation of privacy in the records seized, he
lacks standing to challenge the search and seizure.") (citing
United States v. Britt, 508 F.2d 1052, 1055 (5th Cir. 1975)).

While not frivolous, Every's standing claims fall well
short of establishing that he had a protected personal privacy

interest in the pump room.  While he maintained control over the
room, and controlled access, and designed and built the pump
station, and considers the systems in the pump room his
intellectual property, and keeps relevant information, manuals,
and his notes on the pump station system in the pump room, as
well as, occasionally, his tools, see generally Am. Compl. at ¶
50-52, those allegations all involve Every's duties and
responsibilities as an agent of the Esterhill Boat Services
Corporation.  They do not involve his personal privacy
interests.  The pump systems, and information and manuals are
the property of the Esterhill Boat Services Corporation, not
Every.  Every does not claim that he uses the pump room to store
personal records or personal items of any kind, as one might in
an office desk or closet, other than "his" tools, which he says
he occasionally stored in the pump room.  But, Every obviously
kept the tools for purposes of performing building maintenance
work, a task presumably performed on behalf of the company.

    Accordingly, as with his original complaint, Every is
attempting to vicariously assert the Fourth Amendment rights of
the Esterhill Boat Services Corporation.  Therefore, his Fourth
Amendment claim arising out of the search of the utility room
and seizure of wastewater samples from the Meadow Street
building is dismissed for lack of standing.

2.  Federal Equal Protection Claim

Every's equal protection claim is premised on a selective prosecution theory, that is, that the town violated his rights by bringing a sewer ordinance enforcement action against him, but failed to bring similar charges against others who were similarly situated.  Defendants counter that Every's claim must be dismissed because Every fails to allege facts sufficient to demonstrate that he was treated differently from others who were similarly situated.  Relying on the news articles attached to Every's Amended Complaint, defendants point out that the Meadow Street building had a lengthy history of sewage issues.[5]  And, say defendants, Every fails to identify any comparator with a similar history.

As the court noted previously, to bring a "class of one" equal protection claim, a plaintiff must allege that he was "intentionally treated . . . differently from others similarly situated and there was no rational basis for this disparate treatment."  Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 144 (1st Cir. 2016) (citations omitted).

Although "the formula for determining whether individuals or entities are 'similarly situated' for

---

[5]  The court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint."  Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000).

equal protection purposes is not always susceptible to
precise demarcation," <u>Barrington Cove Ltd. v. R.I.
Hous. & Mortg. Fin. Corp</u>., 246 F.3d 1, 8 (1st Cir.
2001), the case law makes clear that the burdens of
production and persuasion must be shouldered by the
party asserting the equal protection violation.  Thus,
"[p]laintiffs claiming an equal protection violation
must first identify and relate <u>specific instances</u>
where persons <u>situated similarly in all relevant
aspects</u> were treated differently".  <u>Buchanan v. Maine</u>,
469 F.3d 158, 178 (1st Cir. 2006)).

<u>Cordi-Allen v. Conlon</u>, 494 F.3d 245, 250-51 (1st Cir. 2007)

(emphasis in original).


     Specific comparators and their similarities must be alleged

with "reasonable particularity" at the Rule 12(b)(6) stage, as

"[a]n equal protection claimant 'may not prevail [against a Rule

12(b)(6) motion] simply by asserting an inequity and tacking on

the self-serving conclusion that the defendant was motivated by

a discriminatory animus.'"  <u>Barrington Cove, LP</u>, 246 F.3d at 8,

10 (quoting <u>Coyne v. Somerville</u> 972 F.2d 440, 444 (1st Cir.

1992)).  "To carry the burden of proving substantial similarity,

plaintiffs must show an extremely high degree of similarity

between themselves and the persons to whom they compare

themselves."  <u>Cordi-Allen</u>, 494 F.3d at 251 (internal quotations

omitted).  "They must show that they 'engaged in the same

activity . . . without such distinguishing or mitigating

circumstances as would render the comparison inutile.'"  <u>Snyder

v. Gaudet</u>, 756 F.3d 30, 34 (1st Cir. 2014) (quoting <u>Cordi-Allen</u>,

494 F.3d at 251). Moreover, in claims such as Every's, the
plaintiff must ordinarily plead facts that show that the
defendants' "differential treatment of the plaintiff was
motivated by 'bad faith or malicious intent to injure.'"
Snyder, 756 F.3d at 34 (quoting Rubinovitz v. Rogato, 60 F.3d
906, 911 (1st Cir. 1995)).

Every contends that questionable charges were filed against
him for sewer violations, while no charges were filed against
other violators.[6]  He points to McDonalds, which, he alleges, has
an extremely dirty grease trap that the town failed to monitor;
Shaws, which the Littleton Town Manager publicly criticized for
"inconsistent and inadequate maintenance of its grease
management system," Am. Compl. ¶ 23; and the 99 Restaurant,
where a sewage overflow occurred.  More generally, says Every,
sewage issues were a "town-wide problem," "not just a problem in
the sewer line shared by 551 Meadow Street and McDonalds."  Am.
Compl. ¶ 11.  He points to media coverage of other sewage-
related incidents that occurred in the town that did not result
in charges against any alleged perpetrators.  And, according to
Every, the defendants were acting in bad faith, seeking a

_____

[6]     Every takes umbrage at the media coverage surrounding the
charges against him.  To the extent he is alleging that the town
is directly responsible for the manner in which the media
covered the town's charges against him, that allegation lacks
factual support.

scapegoat for the town's sewer issues, and he was singled out because the police chief harbored a long-standing personal grudge against him.  Am. Compl., p. 4.

In his Amended Complaint, Every does identify businesses in the town that also experienced wastewater discharge issues. But, even assuming that those businesses unlawfully discharged sewage in quantities capable of causing obstruction to the flow of the sewers, the circumstances surrounding those purported violations, as alleged by Every, are not sufficiently well pled to determine whether those comparators were, in fact, similarly situated in all relevant aspects.  There are, of course, a panoply of factors that might have led the town to rationally distinguish between purported violators in making decisions about whether and whom to charge with sewage ordinance violations.  For example, there may be material differences or mitigating factors in the comparators' responses to the discharge issues and steps they took to address those issues; there may be relevant differences in the comparators' history of discharge issues; or in the types of septic systems those comparators have installed.  As multiple news articles upon which plaintiff relies in his Amended Complaint note, the 551 Meadow Street property had a lengthy history of unresolved septic issues.  All of those factors might well contribute to

different treatment by the town with respect to enforcement actions.[7] "[A] class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in <u>all respects relevant to the challenged government action</u>." <u>Gianfrancesco v. Town of Wrentham</u>, 712 F.3d 634, 640 (1st Cir. 2013) (emphasis added). <u>See also</u> <u>Rectrix Aerodrome Centers, Inc. v. Barnstable Mun. Airport Comm'n</u>, 610 F.3d 8, 16 (1st Cir. 2010) (requiring a "strict showing of comparability," and stating: "[d]rawing distinctions is what legislators and regulators do every day: without this comparability sieve, every routine governmental decision at the state and local level — of which there are millions every year — could become a class-of-one case in federal court.") (citations omitted).

Because Every fails to allege the requisite degree of similarly between the 551 Meadow Street building and the Littleton McDonalds, Shaws, and 99 Restaurant, he has not asserted a plausible class-of-one claim. His equal protection claim must, therefore, be dismissed.

---

[7] Along those lines, as the Court of Appeals for the Seventh Circuit has noted, the "Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all. Otherwise few speeders would have to pay traffic tickets. Selective, incomplete enforcement of the law is the norm in this country." <u>Hameetman v. City of Chicago</u>, 776 F.2d 636, 641 (7th Cir. 1985) (internal citations omitted).

3.  State Law Claims

Plaintiff's complaint fails to set forth the essential elements of any viable federal cause of action.  Because all federal claims in Every's complaint are resolved, and taking into account the factors identified in Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998), the court declines to exercise supplemental jurisdiction over Every's state law claims.

## Conclusion

For the reasons discussed, and for those given in defendant's memorandum in support of its motion, the Town of Littleton's motion to dismiss (document no. 13) is **GRANTED**, albeit the state law claims are dismissed without prejudice.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 7, 2019

cc:  Robert Every, pro se
     Corey M. Belobrow, Esq.